66 So.3d 716 (2011)
Darrell Ray MORRIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2009-CP-02034-COA.
Court of Appeals of Mississippi.
June 28, 2011.
*717 Darrell Ray Morris, appellant, pro se.
Office of the Attorney General by R. Stewart Smith, Jr., attorney for appellee.
Before LEE, C.J., BARNES, ISHEE and MAXWELL, JJ.
ISHEE, J., for the Court:
¶ 1. While out of prison on earned-release supervision (ERS), Darrell R. Morris physically fought with his father-in-law, Joseph Lambert, which resulted in Lambert being sent to the hospital for medical treatment. Morris was charged with domestic violence aggravated assault, and the Mississippi Department of Corrections (MDOC) scheduled a revocation hearing. Despite evidence presented to support Morris's claim of self-defense, the MDOC ruled that Morris had violated a condition of his ERS status by fighting with another person, and Morris was sent back to prison to serve the remainder of his sentence.
¶ 2. A Jackson County grand jury later "no billed" an indictment[1] for Morris, and he was never prosecuted on the assault charge. Morris challenged the revocation of his ERS, and after a venue change from the Jackson County Circuit Court to the Jefferson County Circuit Court, Morris's motion for post-conviction relief (PCR) was denied. Finding that the circuit court failed to consider relevant evidence to support Morris's claim of self-defense, we reverse the court's decision, and render judgment to clear Morris's record of the ERS violation.

FACTS AND PROCEDURAL HISTORY
¶ 3. Morris was convicted of aggravated assault and sentenced to twelve years in prison on May 18, 2001. Six years later, on May 22, 2007, Morris was released from prison on ERS. The ERS was set to expire on January 31, 2009.
¶ 4. On June 23, 2008, while on ERS, Morris fought with his father-in-law, Lambert. Morris claims that Lambert arrived at his house that day intoxicated. Lambert wanted to speak with his daughter, Jessica, who was Morris's wife. Morris told Lambert that Jessica was not home, *718 and Lambert asked if he could use the phone to call her. While on the phone with Jessica, Lambert exchanged words with her and began cursing. Morris told Lambert to hang up the phone and leave, but Lambert refused. Lambert then threw the phone at Morris and attacked him. Morris struck Lambert once with his fists, which caused Lambert's head to bleed.
¶ 5. Morris then drove Lambert to the hospital. While in the car, Morris called his wife and told her about Lambert's injuries. Jessica called the police, and before Morris and Lambert could get to the hospital, they were stopped by the police. Morris was arrested and charged with aggravated assault.
¶ 6. The next day, Morris received a Rule Violation Report (RVR) from his field officer. The RVR charged Morris with violating the ERS rule against fighting with another person. Morris was removed from ERS and taken into custody. On July 11, 2008, eighteen days before the revocation hearing, Morris's earned-time credit was computed back to his sentence, moving Morris's discharge date to March 6, 2010.
¶ 7. At his ERS revocation hearing on July 29, 2008, Morris argued that he did not violate an ERS rule because he only struck his father-in-law in self-defense, after Lambert had thrown a phone at him. Morris presented affidavits from his wife and his mother to support his claim. Jessica originally told police officers that Morris was the initial aggressor in the argument with her father. However, she later recanted the statements in her affidavit, saying that what she told police officers on the day of the argument was "inaccurate." She also stated that after Morris's arrest, Lambert admitted to her that he had started the fight and attacked Morris.
¶ 8. In her affidavit, Morris's mother asserted that she witnessed the altercation, and Morris was only defending himself from Lambert. She stated that Lambert threw a phone at Morris and then "physically attacked [Morris]." Morris also presented an affidavit from Lambert, in which Lambert stated that he did not want to press charges or testify against Morris. The MDOC did not present any additional evidence at the hearing, other than the arrest record, nor did it dispute the evidence provided by Morris.
¶ 9. Nonetheless, the hearing officer found that Morris had violated a condition of the ERS by fighting with another person and revoked Morris's ERS. Morris went back to prison to serve the remainder of his sentence for assault. He also lost credit for the time spent on ERS.
¶ 10. Following the revocation of Morris's ERS, a Jackson County grand jury returned a "no bill" indictment for the charges against him for domestic aggravated assault. After the grand jury failed to indict him, Morris challenged the revocation of his ERS by filing a PCR motion in the Jackson County Circuit Court, the court wherein Morris was originally convicted and sentenced. The Jackson County Circuit Court transferred the PCR motion to Jefferson County Circuit Court, because Morris was incarcerated in Jefferson County, Mississippi.
¶ 11. In its order transferring venue, the Jackson County Circuit Court noted that Morris was attempting to challenge the revocation of his ERS, but his claim was based on his dissatisfaction with the results of his grievance filed under the administrative-review program (ARP). Morris has since completed the three-step ARP and exhausted his administrative remedies. Shortly thereafter, the Jefferson County Circuit Court denied Morris's PCR motion, affirming the decision made *719 by the MDOC that denied Morris's request for relief.
¶ 12. Morris now appeals, alleging the following errors: (1) the circuit court erred in denying Morris's PCR motion because the jury "no billed" the indictment for the charge of domestic aggravated assault, which was the basis for the revocation of his ERS; and (2) Morris was unfairly penalized because his new release date, excluding the time spent on ERS, was computed and entered into the MDOC's system before his revocation hearing, which demonstrated bias against him.

STANDARD OF REVIEW
¶ 13. A circuit court's denial of post-conviction relief will not be reversed absent a finding that the court's decision was clearly erroneous.[2]Johnson v. State, 908 So.2d 900, 902 (¶ 3) (Miss.Ct.App. 2005). However, when issues of law are raised, the proper standard of review is de novo. Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss.1999).

DISCUSSION
¶ 14. Morris first argues that the circuit court erred in denying his PCR motion because he was never indicted for domestic violence aggravated assault, which was the sole basis for the revocation of his ERS. He admits that he did fight with Lambert, but claims that he only struck Lambert in self-defense. Since defending oneself is an exception to the no-fighting rule, Morris maintains that he did not violate an ERS rule. Thus, he argues that the revocation of his ERS is unlawful.
¶ 15. Under Mississippi law, "[a]n inmate may forfeit all or part of his earned-time allowance for a serious violation of rules." Miss.Code Ann. § 47-5-138(2) (Rev.2004). If the ERS is revoked, "the inmate shall serve the remainder of the sentence and the time the inmate was on earned-release supervision, shall not be applied to and shall not reduce his sentence." Id. at § 47-5-138(7). The MDOC lists a number of violations that could cause an offender to lose his ERS status. Fighting with another person, except in self-defense, is one such violation. Assaulting any person is another.
¶ 16. A review of precedent suggests that actual proof of a violation of the rules is required before the MDOC may revoke a defendant's ERS. While the cases cited below concern the revocation of parole, we find that the law is applicable to ERS because of the similarity indicated in the language of the ERS statute, which provides: "The period of earned-release supervision shall be conducted in the same manner as a period of supervised parole." Id. at § 47-5-138(6).
¶ 17. As a general rule, actual proof that a defendant committed the violation is required before parole may be revoked. Alexander v. State, 667 So.2d 1, 4 (Miss.1995); Moore v. Ruth, 556 So.2d 1059, 1062 (Miss.1990). In Moore, the Mississippi Supreme Court held that an arrest alone is not sufficient to prove that *720 the defendant committed the act which violated the parole. Moore, 556 So.2d at 1062. The Supreme Court found that once a defendant has been acquitted of the criminal charges, "the State must offer actual proof that he committed an act violating the terms and conditions of his parole, and the mere fact that he was arrested and charged with [a crime] may hardly suffice." Id.
¶ 18. A similar standard applies to revocation of probation. Absent a criminal conviction, the State "must present actual proof that the defendant engaged in such criminal conduct." Younger v. State, 749 So.2d 219, 222 (¶ 10) (quoting Grayson v. State, 648 So.2d 1129, 1134 (Miss.1994)). If the evidence shows that it is more likely than not that the offender violated the terms of probation, the probation need not be reinstated, even if the charges are later dismissed. Hardin v. State, 878 So.2d 111, 112 (¶ 3) (Miss.Ct.App.2003).
¶ 19. In the present case, it is undisputed that Morris fought with Lambert, which resulted in Lambert being sent to the hospital. However, Morris provided sufficient evidence at the revocation hearing that he had acted in self-defense. Morris admitted that he hit Lambert, but he claimed that he only did so after Lambert had thrown a phone at him. Morris's wife told the police on the day of the argument that Morris was the instigator of the argument with her father. She later recanted her statements and said that Lambert admitted to her that Lambert initiated the argument and attacked Morris. It is uncontested that Morris's wife did not witness the fight. Therefore, she had no personal knowledge of who had instigated the fight. In addition, an eyewitness account by Morris's mother corroborated Morris's claim that he hit Lambert only after Lambert had attacked him.
¶ 20. While it was not necessary for the MDOC to reinstate Morris's ERS once the grand jury failed to indict him, the evidence presented at Morris's revocation hearing must have demonstrated that he violated the terms of his ERS. Id. Based on the facts presented at the revocation hearing, the evidence does not support a finding that Morris violated an ERS rule when he fought with Lambert. The State did not present evidence, other than the arrest record, to prove that Morris had violated an ERS rule. The State also did not dispute any evidence presented by Morris that he had acted in self-defense. Thus, it cannot be shown that Morris violated the terms of his ERS. Accordingly, we hold that the circuit court's denial of Morris's PCR motion was clearly erroneous.
¶ 21. Morris also argues that the re-computation of his sentence was calculated eighteen days before his revocation hearing, thereby depriving him of due process and equal protection of the law. As a matter of procedure, the MDOC may re-compute a prisoner's sentence before a revocation hearing. Had the hearing officer found Morris not guilty of an ERS rule violation, then the previous dates would have been restored. We do not see how the re-computation of Morris's sentence prior to the hearing prejudiced him. Thus, this issue is without merit.
¶ 22. Morris completed his prison sentence on March 6, 2010, before this case could be decided. Accordingly, we reverse the circuit court's denial of Morris's PCR motion and render a judgment to clear Morris's record of the ERS violation.
¶ 23. THE JUDGMENT OF THE JEFFERSON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND JUDGMENT IS RENDERED TO CLEAR THE DEPENDANT'S *721 RECORD OF THE VIOLATION OF THE EARNED-RELEASE SUPERVISION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.
LEE, C.J., IRVING, P.J., MYERS, BARNES AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND IN THE RESULT. ROBERTS, J., CONCURS IN RESULT ONLY WITH SEPARATE OPINION JOINED BY GRIFFIS, P.J. RUSSELL, J., NOT PARTICIPATING.
ROBERTS, J., concurring in result only:
¶ 24. While I agree with the majority's result in clearing Darrell Morris's record of violation of his earned-release supervision (ERS), I write separately to clarify a point of concern. My concern is this Court's review of Morris's claim should not be a review of a circuit court's denial of a motion for post-conviction relief; instead, it is a review of an administrative agency's decision and should have been analyzed as such.
¶ 25. Morris was released from prison and reclassified by the Mississippi Department of Corrections (MDOC) to ERS status on May 22, 2007. While on ERS, he retains inmate status and is still considered in the exclusive custody of the MDOC pursuant to Mississippi Code Annotated section 47-5-138(6) (Supp.2010).[3] After his reclassification to ERS status and while on earned-release, Morris was involved in a fight with his father-in-law. As a result of the fight, a MDOC hearing officer, after a reclassification hearing, determined that Morris had violated a condition of his ERS and reclassified him from ERS status to custody status on July 29, 2008.
¶ 26. Subsequent to the hearing, the domestic-violence charge against Morris was no-billed by the grand jury. He then filed a PCR motion in the Jackson County Circuit Court, the court wherein he was convicted and sentenced. For a PCR motion, the circuit court would be the only appropriate court in which to file a PCR motion. Stanley v. Turner, 846 So.2d 279, 281 (¶ 7) (Miss.Ct.App.2003). However, Jackson County Circuit Judge Dale Harkey reviewed Morris's PCR motion and found that it was actually an appeal of a grievance under the administrative review program (ARP). Mississippi Code Annotated section 47-5-803(2) (Rev.2004) provides that:
No state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative review procedure unless and until such offender shall have exhausted the remedies as provided in such procedure. If at the time the petition is filed the administrative review process has not yet been completed, the court shall stay the proceedings for a period not to exceed ninety (90) days to allow for completion of the procedure and exhaustion of the remedies thereunder.
¶ 27. On March 23, 2009, Judge Harkey entered an order transferring the matter to the Jefferson County Circuit Court, the court in the county wherein Morris was currently incarcerated, to review Morris's PCR motion as an appeal of an administrative grievance. Jefferson County Circuit *722 Judge Lamar Pickard entered an order on April 15, 2009, requiring the Mississippi Attorney General's Office to answer the allegations Morris had set forth in his motion. In its answer, the MDOC, through the attorney general's office, admitted that Morris had completed the three-step ARP and exhausted his administrative remedies as required. On June 2, 2009, Judge Pickard entered an order denying Morris's motion and affirming the ARP decision because he concluded that the ARP decision was supported by evidence and properly applied the law.
¶ 28. The key point I would like to make is that this Court's review of Morris's claim is that of an appeal of an administrative agency's decision and not of a PCR motion. While on ERS, Morris was under the exclusive jurisdiction of the MDOC, not the circuit court. An analysis of Morris's claim as a PCR motion would require the Jefferson County Circuit Court to have jurisdiction over Morris's claim, which it did not have at the time. Since his claim should be considered an appeal from an administrative agency's decision, the standard of review is whether the decision was "arbitrary or capricious; beyond the agency's scope or powers; or violative of the constitutional or statutory rights of the aggrieved party." Sanders v. Miss. Dep't of Corrs., 912 So.2d 189, 192 (¶ 12) (Miss.Ct.App.2005) (citing Griffis v. Miss. Dep't of Corrs., 809 So.2d 779, 782 (¶ 10) (Miss.Ct.App.2002)). Applying that standard of review, I find that the decision was arbitrary or capricious. At the administrative hearing, Morris submitted evidence from his wife, mother, and father-in-law all indicating that he had acted in self-defense. If Morris had been acting in self-defense, he would not be in violation of an ERS condition. The hearing officer blatantly disregarded this evidence that Morris had acted in self-defense during the fight with his father-in-law. As such, the decision that Morris violated a condition of his ERS, his subsequent reclassification from ERS to custody status, and the circuit court's affirmance of that decision were in error.
¶ 29. While the majority reviews the claim as a PCR motion and properly comes to the same result using an analysis for a PCR motion, I concur in result and write separately to clarify that this Court should be reviewing Morris's claim as a review of an administrative agency's decision and not a PCR motion.
GRIFFIS, P.J., Joins this Opinion.
NOTES
[1] A "no bill" return on an indictment means that the grand jury found insufficient evidence to support a formal charge of indictment.
[2] Morris filed a PCR motion in the circuit court and a subsequent appeal of the denial of that motion in this Court. Although the circuit court affirmed the MDOC's decision based upon its review of Morris's claim under the MDOC's ARP, we note that this Court's appropriate standard of review is that of a PCR motion. Per statute, once his administrative remedies have been exhausted, Morris may challenge the revocation of his ERS only by filing a PCR motion. Miss.Code Ann. § 99-39-5(1)(g). Because Morris has exhausted his administrative remedies and is now challenging the revocation of his ERS pursuant to Mississippi Code Annotated section 99-39-5(1)(g), we review his claims under the standard for a post-conviction-relief proceeding.
[3] The statute reads in pertinent part:

Any inmate, who is released before the expiration of his term of sentence under this section, shall be placed under [ERS] until the expiration of the term of sentence. The inmate shall retain inmate status and remain under the jurisdiction of the department.... The commissioner shall designate the appropriate hearing officer within the department to conduct revocation hearings for inmates violating the conditions of [ERS].
Miss.Code Ann. § 47-5-138(6).